UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 08/12/10

COHEN,

                              Plaintiff,

          -against-

LOCAL 338-RWDSU/UFCW ET AL,

                              Defendants,

08 Civ. 01151 (RJH) (FM)

**MEMORANDUM OPINION
AND ORDER**

*Pro se* plaintiff, Charles Cohen, was a supermarket employee and later a union organizer

with Local 338, RWDSU/UFCW ("Local 338" or "the Union"), before he was terminated from

his employment with Local 338 in 1979 for embezzling funds. He now brings this action under

the Employee Retirement Income Security Act ("ERISA") against a number of defendants

seeking sums he alleges are due to him under certain retirement and pension plans with his

former employers. Defendants have moved to dismiss plaintiff's claims on various grounds. For

the reasons stated below, the motion to dismiss filed by Stuart Applebaum and the Retail,

Wholesale and Department Store Union ("RWDSU") **[25]** is granted; and the motion to dismiss

filed by the Trustees and Fiduciaries of the Local 338 Retirement Fund (the "Retirement Fund"),

the Retirement Plan for Employees of Local 338 and Affiliated Funds (the "Staff Plan"), Local

338, and the law firm of Friedman & Wolf **[27]** is granted in part and denied in part.

## I.      BACKGROUND[1]

Local 338 is a labor organization representing employees in the supermarket and other

industries in the New York City metropolitan area. In 1960, plaintiff began working for

---

[1] Plaintiff's complaint does not contain a clear statement of facts. Consequently, the description of the factual and procedural background that follows is drawn from a variety of sources, including: plaintiff's complaint and the attachments thereto; defendants' briefs; and a 1985 opinion by Judge Leval in a related action, *Cohen v. Local 338 et al*, No. 84 Civ. 3035 (PNL) (S.D.N.Y. Apr. 9, 1985) (Memorandum and Order). This discussion is presented for context only, and the Court makes no findings of fact.

Associated Foods, a supermarket in the Bronx which had a collective bargaining contract with Local 338. When he worked at Associated Foods, plaintiff was a member of the Retirement Fund, an employee benefit plan which covered employees in the supermarket industry for which contributions were made to the plan by industry employers pursuant to a collective bargaining agreement. (*See Cohen v. Local 338 et al,* No. 84 Civ. 3035 (PNL) (S.D.N.Y. Apr. 9, 1985) (Memorandum and Order) ("Leval Decision") at 3.)

In July 1972, plaintiff left his job with Associated Foods to work directly for Local 338 as a union organizer. When he began working for the Union, plaintiff became a member of the Staff Plan, which was for Union employees. (*Id.* at 3-4.) The Union contributed to plaintiff's Staff Plan account while plaintiff worked for the Union. (*See id.*) It is not clear whether the Union also made contributions to plaintiff's Retirement Fund account while plaintiff was a Union employee.[2] In May 1979, the Union fired plaintiff, claiming that he was stealing money from the Union and affiliated employee benefit plans. In 1980, plaintiff was convicted of embezzlement in violation of 18 U.S.C. § 664.

In 1984, plaintiff brought a lawsuit against Local 338 and the trustees of the Staff Plan, but not against the Retirement Fund, relating to his entitlement to benefits under the Staff Plan.[3] (*See* Leval Decision at 1, 2 & n.2.) The lawsuit was assigned to Judge Leval, who was then a district judge. Plaintiff, who was then represented by counsel, alleged that he did not receive all the benefits to which he was entitled under the Staff Plan when he was terminated from his position as a union organizer in 1979. Among other things, plaintiff's complaint in the 1984 action requested an "accounting . . . of all contributions made and/or which should have been

---

[2] *See* discussion at page 13 and footnote 13, *infra.*
[3] Although plaintiff did not sue Retirement Fund in the 1984 action, the parties appeared to agree in that action that plaintiff had satisfied all of the Retirement Fund's vesting requirements and should receive the full amount of his pension when he reached age 65. (*See* Leval Decision at 2.)

made by the defendant[s] [under the Staff Plan]" and a "judgment against defendant[s] for such value." (*See* Case No. 84 Civ. 3035, Dkt. No. 7 ("Moss Affidavit"), Ex. G (Verified Complaint) at 9-10.)  Plaintiff also raised claims for unpaid vacation pay.  (*Id.* ¶¶ 30-33.)

In the 1984 lawsuit, it was undisputed that plaintiff had been paid 20% of his credit balance under the Staff Plan when he was discharged from the Union in 1979.  That amount was based on the Staff Plan's calculation that plaintiff had served as an employee of the Union for just under seven years, from July 1972 to May 1979.  However, plaintiff argued that the years he had worked for Associated Foods should be added to the almost seven years that he had worked for the Union when calculating his entitlement to benefits under the Staff Plan, which would give him over ten years of service and make him eligible to receive 100% of his credit balance under the terms of the Staff Plan.  (*See* Leval Decision at 3.)  Judge Leval rejected plaintiff's argument in an opinion dated April 9, 1985.  (*Id.* at 3-5.)  Judge Leval explained that plaintiff had been part of two separate and distinct employee benefit programs during the course of his relationship with Local 338: (1) the Local 338 Retirement Fund (*i.e.*, the Retirement Fund)[4], an employee benefit plan which covered employees in the supermarket industry for which contributions were made to the plan by industry employers pursuant to a collective bargaining agreement; and (2) the Retirement Plan for Employees of Local 338 and of Affiliated Funds (*i.e.*, the Staff Plan)[5], which was for employees of the Union.  (*Id.* at 3-4.)  Judge Leval held that since plaintiff had worked as an employee of the Union for less than seven years, pursuant to the terms of the Staff Plan he was only entitled to 20% of his credit balance under the Staff Plan upon his termination.  (*Id.* at 3-5.)  Therefore, Judge Leval granted summary judgment to the Staff Plan dismissing plaintiff's claim for 100% of his credit balance under the Staff Plan.  The following day, on April 10, 1985,

---

[4] The Retirement Fund is sometimes referred to in the attachments to the Amended Complaint as the "Industry Plan."
[5] The Staff Plan is sometimes referred to in the attachments to the Amended Complaint as the "Office Plan"

Judge Leval dismissed plaintiff's complaint in its entirety.  (*See* Case No. 84 Civ. 3035, Dkt. No. 14.)  After Judge Leval dismissed plaintiff's complaint, the case was restored to Judge Leval's active docket by order dated May 13, 1985, possibly because plaintiff had raised other claims (*e.g.*, for vacation pay) and the Staff Plan had raised counterclaims that were not directly addressed by Judge Leval's April 9, 1985 opinion.  (*See* Case No. 84 Civ. 3035, Dkt. No. 15.) However, on July 7, 1986, the parties agreed to dismiss all of plaintiff's claims and the Staff Plan's counterclaims with prejudice pursuant to Federal Rule of Civil Procedure 41.  (*See* Case No. 84 Civ. 3035, Dkt. No. 16.)

Since 1986, plaintiff has continued, albeit somewhat sporadically, to attempt to recover pension benefits he believes he is owed based on his employment with Associated Supermarkets and/or Local 338 from 1960 to 1979.  Over the years, plaintiff has written numerous letters to administrators of various pension plans, and has also contacted the U.S. Department of Labor Pension and Welfare Benefits Administration a number of times.  (*See, e.g.,* Attachments to Amended Complaint (hereinafter "Attachments") at 10-11, 73-74, 78-79, 83-88.)

On September 25, 2007, the court's *Pro Se* Office received a three page complaint from plaintiff which named the following defendants: Local 338-RWDSU/UFCW AFLI-CIO CLC;[6] John D. Durso, President; and the Board of Trustees of Local 338 Retirement Plan and Fund Affiliated Unions.  The document was framed as a "Request to proceed to re-open Case #84 Civ. 3035"—*i.e.*, the lawsuit that plaintiff had filed before Judge Leval.  By Order dated February 5, 2008, Judge Wood dismissed plaintiff's complaint, with leave to amend, on the ground that it was confusing and ambiguous and failed to provide the defendants with fair notice of plaintiff's

---

[6] Although plaintiff identified Local 338 as an AFL-CIO local, according to defendants Local 338 is not longer affiliated with the AFL-CIO and that the correct name should be "Local 338, RWDSU/UFCW."  The Court has corrected the caption of this case based on defendants' representation.

claims and the grounds upon which they rest.  *See Cohen v. Local 338-RWDSU/UFCW AFL-CIO CLC et al*, 08 Civ. 1151 (KMW) (S.D.N.Y. Feb. 8, 2008) (Order).

Plaintiff then filed an amended complaint on April 3, 2008 (the "Amended Complaint"). The caption of the Amended Complaint named the same defendants as his initial complaint, but the text also identified two other defendants: "Stuat Appelbaun" [sic] and "Friedman + Wolf, Attorney at Law."  (*See* Amended Complaint.)  Judge Wood dismissed the Amended Complaint *sua sponte* on *res judicata* grounds, holding that plaintiff was attempting to relitigate claims that were raised and adjudicated on the merits in the 1984 action.  *Cohen v. Local 338-RWDSU-UFCW AFL-CIO CLC*, No. 08 Civ. 1151 (KMW) (S.D.N.Y. June 24, 2008) (Order).  However, the Second Circuit vacated Judge Wood's dismissal and remanded the case for further proceedings, citing *Scherer v. Equitable Life Assurance Soc'y of U.S.*, 347 F.3d 394, 398 n.4 (2d Cir. 2003) ("[T]he *sua sponte* application of res judicata is not always desirable, given the variety of legal and equitable considerations involved and the difficulties that may be associated with determining its applicability when the parties have not briefed the issue.").  *Cohen v. Local 338-RWDSU-UFCW AFL CIO CLC*, No. 08 Civ. 3919 (Order) (2d Cir. Dec. 23, 2008).  The case was then reassigned to the undersigned.

The Amended Complaint is submitted on a form complaint for cases in the Southern District of New York.  In the "Statement of Claim" section, plaintiff states that the events giving rise to the claim occurred in May 1984.  (Amended Complaint at 3.)  In the section entitled "Facts," plaintiff states "See Attachment."  (*Id.*)  Plaintiff attaches ninety-nine pages of documents, which include, *inter alia*, various documents from the 1984 action before Judge Leval, various letters from 1980 to 2004 relating to plaintiff's requests for benefits, and excerpts from the bylaws of certain pension plans at issue.  In the "Relief" section of the Amended

Complaint, plaintiff states that he is seeking "to recover retirement benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan or to clarify his right to future benefit under the term of the plan." (*Id.* at 4.)  It appears that plaintiff seeks to bring his claims under § 502 of ERISA, 29 U.S.C. § 1132.[7]

## II.     DISCUSSION

### A.     Documents Considered in Ruling Upon Defendants' Rule 12(b)(6) Motions

Under Rule 12(b), a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007); *see Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (Rule 12(b) calls for "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.") (citation omitted).  In resolving a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief may be granted, "a court may consider 'documents attached to the complaint as an exhibit or incorporated in it by reference, . . . matters of which judicial notice may be taken, or . . . documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit.'" *Chambers v. Time-Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quoting *Brass v. American Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993)).  Here, the Court has considered the Amended Complaint, the ninety-nine pages of attachments thereto, and the filings from plaintiff's 1984 lawsuit in ruling upon the pending motions to dismiss.

---

[7]  In June 2009, plaintiff submitted to the undersigned's Chambers what appears to be a different version of the Amended Complaint.  That submission consisted of certain pages from the Amended Complaint with additional handwriting and notations from plaintiff, and at least one piece of correspondence not included as part of the Amended Complaint.  It is not clear whether that submission was ever served on defendants.  The version submitted to Chambers was not docketed.  The present motions to dismiss are directed to the Amended Complaint filed on April 3, 2008.  However, the analysis in this Opinion would apply equally to the June 2009 submission since it does not differ from the Amended Complaint in any way that would be material to the disposition of the pending motions.

**B.      Summary of Plaintiff's Claims**

Rule 8 of the Federal Rules of Civil Procedure requires that a complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief" sufficient to give the defendants fair notice of plaintiff's claims and the grounds upon which they rest.  Fed. R. Civ. P. 8(a); *see Conley v. Gibson*, 355 U.S. 41, 47 (1957), *abrogated in part on other grounds by Twombly*, 550 U.S. 544.  *Pro se* complaints should be "construed liberally in favor of the *pro se* litigant." *Tapia-Ortiz v. Doe*, 171 F.3d 150, 152 (2d Cir. 1999) (per curiam).  Thus, the Court should "'interpret [*pro se* Complaints] to raise the strongest arguments that they suggest.'" *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).  Although the Amended Complaint is not a model of clarity, granting it the liberal construction to which it is due, the Court understands plaintiff to be raising the following claims: (1) a claim against the law firm of Friedman & Wolf for certain unidentified conduct; (2) a claim for 100% of his credit balance under the Staff Plan; (3) a claim for benefits under a plan known as the RWDSU Deferred Compensation Plan; (4) a claim for unpaid employer contributions to plaintiff's Staff Plan and/or Retirement Fund accounts in 1978 and 1979; (5) a claim for unpaid vacation pay.[8] [9]

---

[8]  This list represents the Court's best attempt to interpret the Amended Complaint and the attachments thereto to raise the strongest arguments they suggest.  The Court notes that one of the attachments to the Amended Complaint also includes the following table listing sums that plaintiff believes he is owed from the following accounts:

| | |
|---|---|
| Office Plan & Fund | $15,165.50 |
| Industry Plan & Fund | $25 x the Years (19 Years) |
| International Plan RWDSU | 7% per Year x 7 years |
| "            " | 7-years at $26,825 = $1,1013,985 |
| "            " | 27-years at 20%    = $,1,458,795 |
| "            " | 5 years of back pay at $2,400,000 |
| | (60 months totals $144,000.00) |

(Attachments at 5.)  It is not clear where the numbers on this chart come from.  As far as the Court can discern, most of the entries on this chart reflect plaintiff's calculation of the money he believes he is owed based on the five claims just described, rather than separate claims.  For example, plaintiff's claim that he is owed $15,165.50 from the "Office Plan & Fund" appears to be based on his contention that he was entitled to 100% of his credit balance under the Staff Plan. (*See, e.g., id.* at 83, 85.)  Similarly, plaintiff's claim for benefits from the International Plan RWDSU appears to reflect plaintiff's calculation of the sum he believes is owed under the RWDSU Deferred Compensation

Defendants have moved to dismiss all of the claims in the Amended Complaint on various grounds.  Freidman & Wolf, Local 338, and Stuart Applebaum have moved to dismiss on the ground that plaintiff fails to state a claim against them.  The Staff Plan has moved to dismiss on *res judicata* grounds, arguing that all claims against it are barred because they were litigated and decided in the 1984 action.  In addition, the Staff Plan, the Retirement Fund, Local 338, Mr. Applebaum, and the RWDSU have moved to dismiss plaintiff's claims on statute of limitations grounds.  The discussion below analyzes whether the Amended Complaint survives defendants' motions to dismiss on a claim-by-claim basis.  For the reasons stated below, the Court finds that all of plaintiff's claims must be dismissed under Rule 12(b)(6) except for plaintiff's claim against the Union and/or the Retirement Fund for unpaid employer contributions to his Retirement Fund account in 1978 and 1979.

**B.       Analysis of Plaintiff's Claims**

**1.       Claims against Friedman & Wolf**

The Amended Complaint names the law firm of Friedman & Wolf LLP as a defendant, but contains no allegations whatsoever against Friedman & Wolf.  Consequently, the action must

---

Plan.  The only entry on plaintiff's chart that the Court does not understand to be duplicative of five claims just described is the reference to "$25 x the Years (19 Years)" allegedly owed to plaintiff by the Industry Plan & Fund (*i.e.*, the Retirement Fund).  However, plaintiff has not articulated any factual or legal basis for a claim that he is owed $25 per year for 19 years (for a total of $475), and the Court cannot discern any such basis from the Amended Complaint or from the ninety-nine pages of attachments thereto.  Plaintiff, therefore, fails to plead enough facts to state a plausible claim that he is entitled to recover $475 from the Retirement Fund, *see Twombly*, 550 U.S. at 570, and fails to give defendants fair notice of the basis for such a claim.  *See Conley*, 355 U.S. at 47.

[9] In one of the attachments to the Amended Complaint, plaintiff also asserts that there was "unethical behavior" by Cohen, Weiss & Simon, and Mr. Lendsay Jones, attorneys involved in the 1984 action before Judge Leval.  Specifically, plaintiff alleges that "[o]n May 11, 1984, a deposition was given . . . which did not include me.  Someone at the disposition [sic] impersonated me," and that "[o]n July 11, 1984, a court proceeding was held in reference to my pension and retirement fund. I was not present nor was I contacted or asked to be present." (*See* Attachments at 3.)  However, it does not appear from plaintiff's submissions that he, in fact, seeks relief based on this alleged unethical behavior.  Plaintiff has not named any of the attorneys involved in the 1984 action as defendants in this action, nor has he requested any monetary or other relief against these individuals.  The Court construes plaintiff's references to the alleged unethical conduct by these attorneys not as an attempt to plead a separate cause of action, but merely as an attempt by plaintiff to provide factual support for his argument that the result of the 1984 court proceeding should be overturned.

be dismissed as against Friedman & Wolf for failure to state a claim upon which relief can be granted. *See Ho Myung Moolsan Co., Ltd. v. Manitou Mineral Water, Inc.*, 665 F.Supp.2d 239, 251 (S.D.N.Y. 2009) ("When a complaint names defendants in the caption but makes no substantive allegations against them in the body of the pleading, the complaint does not state a claim against these defendants."); *U.S. ex rel. Eisenstein v. City of New York*, No. 03 Civ. 413 (DAB), 2006 WL 846376, at *2 (S.D.N.Y. Mar. 31, 2006).[10]

### 2.    Claim for 100% of Vested Benefits under the Staff Plan

The central claim in plaintiff's Amended Complaint appears to be that the administrators of the Staff Plan should have added the twelve years he worked at Associated Foods to the almost seven years he worked as a union organizer in calculating his entitlement to benefits under the Staff Plan, such that he would have been entitled to 100% of his vested benefits upon his termination in 1979, rather than the 20% that he was awarded. (*See, e.g.*, Attachments at 9 ("I transferred with continual service to the Local 338 Union Office and began working on 7/8/71 . . . which proves that I have in excess of 15 years of continual service, which makes me 100% vested and not the 20% stated.").)  This claim must be dismissed because it is both untimely and barred by *res judicata*.

### a.    Timeliness

The Employee Retirement Income Security Act of 1974, codified at 29 U.S.C. § 1001-1461, does not prescribe a limitations period for actions brought under Section 502 of the Act, 29 U.S.C. § 1132, under which plaintiff appears to have brought his claims. *See Burke v.*

---

[10] It appears that plaintiff's desire to bring a claim against Friedman & Wolf is based on a November 6, 2002 letter written by Teague P. Paterson, who was then apparently an attorney at the firm. (*See* Attachments at 10-12.)  The letter, which was attached to the Amended Complaint, states that Friedman & Wolf represents "the trustees of the Local 338 Retirement Fund" and responds on behalf of the trustees to an inquiry made by the United States Department of Labor regarding employer contributions to plaintiff's account for the years 1978 and 1979.  (*Id.*)  However, nothing about the letter suggests that Friedman & Wolf has engaged in any wrongdoing or other conduct that would entitle plaintiff to relief.  Plaintiff cannot bring a claim against Friedman & Wolf solely because the firm responded on its client's behalf to an inquiry regarding plaintiff's benefits.

*PriceWaterhouseCoopers LLP Long Term Disability Plan*, 572 F.3d 76, 78 (2d Cir. 2009) (per curiam).  "Therefore, the applicable limitations period is 'that specified in the most nearly analogous state limitations statute.'"  *Id.*  (quoting *Miles v. N.Y. State Teamsters Conference Pension & Ret. Fund Employee Pension Benefit Plan*, 698 F.2d 593, 598 (2d Cir. 1983)).  In this case, "New York's six-year limitations period for contract actions, N.Y. C.P.L.R. 213, applies as it is most analogous to § 1132 actions."  *Id.*

 "A federal court generally employs the 'discovery rule,' under which 'a plaintiff's cause of action accrues when he discovers, or with due diligence should have discovered, the injury that is the basis of the litigation.'"  *Guilbert v. Gardner*, 480 F.3d 140, 149 (2d Cir. 2007) (quoting *Union Pac. R. Co. v. Beckham*, 138 F.3d 325, 330 (8th Cir. 1998)).  The Second Circuit has held that "[c]onsistent with the discovery rule, the general rule in an ERISA cause of action is that a cause of action accrues after a claim for benefits has been made and has been formally denied," *id.*, or where there has been a "clear repudiation by the plan that is known, or should be known, to the plaintiff – regardless of whether the plaintiff has filed a formal application for benefits."  *Carey v. Int'l Bhd. of Elec. Workers Local 363 Pension Plan*, 201 F.3d 44, 48 (2d Cir. 1999); *see Miles*, 698 F.2d at 598.[11]

Under these standards, plaintiff's claim that he was entitled to 100% of his credit balance under the Staff Plan is time-barred.  Plaintiff was aware at least as early as 1984, when he prosecuted the lawsuit before Judge Leval, that the administrators of the Staff Plan had clearly

---

[11] In addition to bringing an action within the applicable limitations period, a plaintiff must generally exhaust his administrative remedies before bringing an ERISA action in federal court.  *See Paese v. Hartford Life Acc. Ins. Co.*, 449 F.3d 435, 445-46 (2d Cir. 2006); *Sanfilippo v. Provident Life & Cas. Ins. Co.*, 178 F.Supp.2d 450, 458 (S.D.N.Y. 2002).  However, "[t]his requirement is not jurisdictional; rather, the failure to exhaust administrative remedies may be raised as an affirmative defense by a defendant in an action bought by a plan beneficiary under section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B)."  *Scarangella v. Group Health Inc.*, No. 05 Civ. 5298 (RJS), 2009 WL 764454, at *9 (S.D.N.Y. Mar. 24, 2009) (citing *Paese*, 449 F.3d at 446).  As defendants have not raised an exhaustion defense in this case, the Court has not determined whether plaintiff has properly exhausted his administrative remedies.

and unequivocally repudiated his contention that he was entitled to 100% of his credit balance under that plan.  Indeed, the Staff Plan argued in that proceeding that plaintiff was only entitled to 20% of his credit balance—and Judge Leval agreed with that argument.  *See* Leval Decision at 3-5.  Therefore, plaintiff's claim accrued as early as 1984 and is undoubtedly untimely.

       **b.**    ***Res Judicata***

       Plaintiff's claim that he was entitled to 100% of his vested benefits under the Staff Plan is also barred by *res judicata*.[12]  In this Circuit, *res judicata* applies to bar litigation of a claim when: "(1) the previous action involved an adjudication on the merits, (2) the previous action involved the [same parties] or those in privity with them [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action."  *Pike v. Freeman,* 266 F.3d 78, 91 (2d Cir. 2001) (citations omitted).  All of these requirements easily met here  The Court's records show that plaintiff raised the same claim that he was 100% vested in the Staff Plan against the Staff Plan in 1984, and that Judge Leval issued a final decision specifically ruling against plaintiff on the merits of that claim.  *See generally* Leval Decision.  Plaintiff cannot relitigate the same claim now merely because he is unhappy with Judge Leval's decision.

**3.**      **Unpaid Benefits under the RWDSU Deferred Compensation Plan**

       Plaintiff also claims that he was denied benefits to which he was entitled under the RWDSU Deferred Compensation Plan ("RWDSU Plan").  By way of background, it appears from the documents attached to the Amended Complaint that the RWDSU Plan is a separate benefit plan from the Retirement Fund and the Staff Plan.  The attachments to the Amended Complaint reveal that the administrators of the RWDSU Plan denied plaintiff coverage under this plan on the ground that he did not have twenty years of service with the RWDSU, which

---

[12] While generally *res judicata* is an affirmative defense pleaded in a defendant's answer, "when all relevant facts are shown by court's own records, of which the court takes notice, the defense may be upheld on a Rule 12(b)(6) motion without requiring an answer."  *Day v. Moscow*, 955 F.2d 807, 811 (2d Cir. 1992).

according to plan administrators rendered plaintiff ineligible for benefits under the terms of the RWDSU Plan.  (*See* Attachments at 78, 79, 81-82).  However, plaintiff maintains that if the years he worked at Associated Supermarkets are added to the years he worked as a union organizer for Local 338, and if he is also credited the time he worked from 1953 to 1959 at a different supermarket under a different union, he satisfies the twenty year service requirement.  (*See id.* at 4.)

Plaintiff's claim for benefits under the RWDSU Plan is barred by the statute of limitations.  Documents attached to the Amended Complaint indicate that plaintiff was notified by the RWDSU in writing as early as July 20, 2000 that plan administrators did not consider him to be eligible for coverage under the RWDSU Plan because he did not have twenty years of service.  (*See id.* at 81-82 (July 20, 2000 Letter from RWDSU to Plaintiff).)  Thus, the RWDSU clearly repudiated any claim by plaintiff that he had accumulated twenty years of service and was entitled to benefits under the RWDSU Plan as early as July 20, 2000.  Because plaintiff did not bring this action within six years of that date, his claim is untimely.  *See Carey*, 201 F.3d at 48 (ERISA's six year statute of limitations begins to run upon clear repudiation by pension plan of plaintiff's entitlement to benefits).  Since the claim for benefits under the RWDSU Plan appears to be plaintiff's only against the RWDSU and/or Stuart Applebaum (the RWDSU's President), these defendants are dismissed from this action.[13]

**4.      Claim for Unpaid Employer Contributions to Plaintiff's Pension Fund Account(s) in 1978 and 1979**

Plaintiff's third claim appears to be that his employer's contributions were not credited to his pension fund account(s) in 1978 and 1979.  (*See id.* at 10, 19, 77, 85.)  It is not clear from the

---

[13] The Amended Complaint must also be dismissed against Mr. Applebaum for failure to state a claim upon which relief may be granted because it contains no allegations against Mr. Applebaum and the documents attached thereto do not suggest that Mr. Applebaum has engaged in any wrongdoing.  *Ho Myung Moolsan*, 665 F.Supp.2d at 251.

Amended Complaint whether plaintiff is claiming that employer contributions for 1978 and 1979 were not credited to his Staff Plan account, to his Retirement Fund account, or to both accounts, as the documents attached thereto do not clearly distinguish between the two pension plans and contain references to unpaid contributions that could be interpreted as pertaining to either plan.[14] Defendants initially argued in their brief in support of their motion to dismiss that "[t]he amount of benefits to which Cohen was entitled under the Retirement Fund was complete when Cohen left Associated Foods in 1972," suggesting that they believed that no claim for unpaid contributions to the Retirement Fund could lie for 1978 and 1979 because plaintiff's employer during those years (the Union) was not required to make any contributions to the Retirement Fund (as opposed to the Staff Plan) after 1972. (Def. Br. at 9-10.) However, in an additional submission filed on June 11, 2010, defendants take what appears to be a conflicting position— that while plaintiff was working for the Union from 1972 to 1979, he "received credits for the Retirement Fund (as well as the Staff Plan . . .)" and that he "received all of the credits to which he is entitled." (*See* Def. June 11, 2010 Submission at 2.) Thus, defendants now appear to be conceding that the Union was required to contribute to the Retirement Fund from 1972 to 1979, but arguing that the Union made all the required contributions. Given the ambiguity in the documents attached to the Amended Complaint and the seemingly conflicting (or, at minimum, confusing) arguments advanced by defendants, and consistent with the Court's obligation to

---

[14] One document attached to the Amended Complaint refers to a claim for unpaid contributions in 1978 and 1979 against the "Local 338 Retirement Fund." (*See Attachments* at 10.) It is not clear whether this is a reference to the Retirement Fund or the Staff Plan. Another document attached to the Amended Complaint suggests that plaintiff seeks to bring a claim for unpaid employer contributions to his account for the years 1978 and 1979 against the "Retirement Plan for Employees of Local 338 & Affiliated Funds," which the Court assumes is a reference to the Staff Plan. (*See id.* at 77.) Another attachment to the Amended Complaint is a computer printout showing employer contributions to one of plaintiff's accounts from 1962 to 1978, upon which plaintiff has made handwritten notes alleging that his account was not credited for the years 1978 and 1979. (*See id.* at 19.) The printout does not indicate whether it reflects employer contributions to plaintiff's Retirement Fund or Staff Plan account (or some combination thereof), but it could be the former since the printout shows employer contributions to plaintiff's account beginning in 1962 and plaintiff was not eligible to start receiving contributions to the Staff Plan until 1972, when he left Associated Foods and started working directly for the Union.
.

construe plaintiff's complaint to raise the strongest arguments it suggests, the Court construes the

Amended Complaint as raising claims for unpaid contributions to plaintiff's Staff Plan account

and to his Retirement Fund account for the years 1978 and 1979.  The Court construes these

claims as being against both the Union (plaintiff's employer in 1978 and 1979) and the relevant

plan, whether the Staff Plan or the Retirement Fund.[15]  The discussion that follows addresses the

viability of each of those claims.

     **a.**       **Unpaid Contributions to Staff Plan Account**

To the extent plaintiff seeks to bring a claim against the Union and/or the Staff Plan for

unpaid employer contributions to plaintiff's Staff Plan account in 1978 and 1979, that claim is

barred under the doctrine of *res judicata* because plaintiff already litigated his entitlement to

benefits under the Staff Plan in 1984  As noted above, *res judicata* bars the litigation of a claim

when "(1) the previous action involved an adjudication on the merits, (2) the previous action

involved the [parties] or those in privity with them [and] (3) the claims asserted in the subsequent

action were, or could have been, raised in the prior action."  *See Pike,* 266 F.3d at 91.  All of the

pre-requisites to a finding a *res judicata* are met on these facts.

First, the 1984 action involved an adjudication on the merits of plaintiff's claim to

additional benefits from the Staff Plan.  In that litigation, Judge Leval granted summary

judgment to the Staff Plan that plaintiff was "not entitled to any additional payment under the

Retirement Plan for Employees of Local 338 and Affiliated Funds," (*i.e.*, the Staff Plan).  Leval

Decision at 6.  *See Hennessy v. Cement & Concrete Worker's Union Local 18A*, 963 F.Supp.

---

[15] The Union argues that any claims against it must be dismissed because the Amended Complaint "does not list a single claim against Local 338."  (Def. Br. at 5.)  But even though the text of the Amended Complaint does not contain specific factual allegations against Local 338, the attachments thereto refer in several places to a claim for unpaid contributions by plaintiff's employer to his accounts in 1978 and 1979.  (*See* Attachments at 10, 19, 77, 85.)  Moreover, Local 338 responded to other claims raised by plaintiff solely in the attachments to the Amended Complaint, such as plaintiff's claim for vacation pay (*see* Def. Br. at 11-12), and thus was obviously on notice of claims raised only in the attachments to the Amended Complaint.

334, 339 (S.D.N.Y.1997) (court's grant of summary judgment was a final adjudication on the merits).  Moreover, plaintiff dismissed any other claims he may have had for unpaid benefits against the Staff Plan with prejudice, which operates as a final adjudication of any claims raised by plaintiffs that cannot be said to have been disposed of by Judge Leval's opinion.  *See Marvel Characters, Inc. v. Simon,* 310 F.3d 280, 287 (2d Cir. 2002) (a dismissal with prejudice operates as a final judgment for *res judicata* purposes).  Thus, there was clearly a final judgment in 1984 on plaintiff's claim for additional benefits from the Staff Plan.

The second requirement for the application of *res judicata*—that the parties be the same or in privity with one another—is also satisfied here.  "[P]rivity . . . represents a legal conclusion that the relationship between [the parties] is sufficiently close to [support] preclusion . . . [A] finding of privity . . . depends on whether, under the circumstances, the interests of the non-party were adequately represented."  *Amalgamated Sugar Co. v. NL Indus., Inc.*, 825 F.2d 634, 640 (2d Cir. 1987) (internal quotation marks and citation omitted).  In this case, both plaintiff and the Staff Plan were parties to the 1984 action.  The Union was not formally a party to the 1984 action, but as the sponsor of the Staff Plan its interests were aligned with those of the Staff Plan; therefore, the Union was in privity with the Staff Plan.  *See id.*; *Daley v. Marriott Int'l, Inc.*, 415 F.3d 889, 897 (8th Cir. 2005) (plaintiff could not sue employer in its capacity as administrator of benefit plan where he already sued benefit plan itself because employer was in privity with plan since their interests in the earlier action were identical); *Adams v. IBM Personal Pension Plan*, No. 07 Civ. 6984 (JSR), 2008 WL 344699, at *2 (S.D.N.Y. Feb. 5, 2008) (privity existed and *res judicata* applied to bar later lawsuit where plaintiff first sued IBM and later sought to raise the same claims against IBM's pension plan because the IBM and the plan were "closely related" in

the sense that IBM was the sponsor of the plan); *Wren v. Cigna Healthcare of Virginia, Inc.*, No. 05 Civ. 344, 2006 WL 344801, at *4 (W.D. Va. Feb. 15, 2006).

Finally, plaintiff's current claim for unpaid employer contributions to his Staff Plan account in 1978 and 1979 was raised in the prior action.  Both the prior action and the present action relate to the question of what sums plaintiff was owed under the Staff Plan based on his service with the Union from 1972 to 1979.  In the 1984 action, plaintiff sought an "accounting . . . of *all contributions* made and/or *which should have been made* by the defendant[s] [under the Staff Plan]" and asked for a "judgment against defendant[s] for such value." (See Case No. 84 Civ. 3035, Dkt. No. 7 ("Moss Affidavit"), Ex. G (Verified Complaint) at 9-10) (emphasis added).  Although Judge Leval's 1985 opinion was primarily addressed to the specific question of whether plaintiff was 100% or 20% vested in the Staff Plan when he was terminated, the parties' subsequent dismissal of the entire action with prejudice was final adjudication on the merits on the broader question of whether all required contributions had been made to plaintiff's Staff Plan account.  *See Marvel*, 310 F.3d at 287 (dismissal with prejudice operates as a final judgment for *res judicata* purposes).  Plaintiff cannot undo that dismissal now by concocting a new theory—this time involving unpaid employer contributions for 1978 and 1979—of why he did not, in fact, receive all the sums due to him under the Staff Plan.  *See Woods v. Dunlop Tire Corp.*, 972 F.2d 36, 38 (2d Cir. 1992) ("[w]hether or not the first judgment will have preclusive effect depends in part on whether the same transaction or connected series of transactions is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to the second were present in the first:") (citing *NLRB v. United Techs.*, 706 F.2d 1254, 1260 (2d Cir. 1983)); *id.* at 39 ("[i]t is the identity of the facts surrounding the occurrence which constitutes the cause of action, not the legal theory upon which [plaintiff] chose to frame her

complaint."); *Berlitz Sch. of Languages of Am., Inc. v. Everest House*, 619 F.2d 211, 215 (2d

Cir.1980) ("[W]hatever legal theory is advanced, when the factual predicate upon which claims

are based are substantially identical, the claims are deemed to be duplicative for purposes of *res*

*judicata*.").

> **b.      Unpaid Contributions to Retirement Fund Account**

On the other hand, to the extent plaintiff's claim is construed as being against the Union

and/or the Retirement Fund for unpaid employer contributions to his Retirement Fund account in

1978 and 1979, such a claim would not be barred by the doctrine of *res judicata*.  The 1984

action did not adjudicate the question of plaintiff's entitlement to benefits under the *under the*

*Retirement Fund*; it related to plaintiff's entitlement to benefits under the Staff Plan  (*See* Leval

Opinion at 3-5.)  The Retirement Fund was not a party to the 1984 action; nor was it in privity

with any of the parties to that action since there is no indication that its interests were represented

by or even aligned with the parties to that action.  *See Amalgamated Sugar*, 825 F.2d at 640.

Thus, the requisite identity of parties and claims for the application of *res judicata* is lacking.

*See Pike,* 266 F.3d at 91.

The Retirement Fund and the Union contend that any claims by plaintiff for unpaid

contributions to plaintiff's Retirement Fund account must be dismissed on statute of limitations

grounds.  (*See* Def. Br. at 9-11.)   In support of this argument, they offer three different

arguments for why plaintiff's cause of action accrued more than six years before he brought this

action.  However, none of these arguments withstands scrutiny when evaluated against this

circuit's governing case law regarding the accrual of ERISA claims.

First, defendants argue that the statute of limitations on any claim by plaintiff for unpaid

benefits under the Retirement Fund started to run in 1972, and would have expired in 1978,

because "the amount of benefits to which Cohen was entitled under the Retirement [Fund] was complete when Cohen left Associated Foods in 1972." (*Id.* at 9-10.)  This argument misconstrues the governing law regarding the accrual of an ERISA cause of action.  As noted above, an ERISA cause of action accrues after a claim for benefits has been made and formally denied, or where there has been a "clear repudiation by the plan that is known, or should be known, to the plaintiff – regardless of whether the plaintiff has filed a formal application for benefits." *Guilbert*, 480 F.3d at 149; *Carey*, 201 F.3d at 48.  Thus, plaintiff's departure from his job with Associated Foods in 1972 would not in itself have started the running of the statute of limitations on any claims he may have had for unpaid contributions to his Retirement Fund account.  *See id.*  Nothing in the record presently before the Court—which is limited, this being a motion to dismiss—shows that the Retirement Fund or the Union clearly repudiated plaintiff's claim that employer contributions for 1978 and 1979 were not credited to his Retirement Fund account more than six years before plaintiff brought this action.[16]

Defendants' second argument is that the statute of limitations started to run when Judge Leval issued his April 9, 1985 decision dismissing plaintiff's claims against the Staff Plan.  (*See* Def. Br. at 10 ("although the Retirement Fund was not a defendant in the [1984 action]. . . it is clear that, by the time of Judge Leval's April 9, 1985 decision, Cohen was aware of Retirement Fund issues.  It is too late to bring a claim regarding the Retirement Fund twenty-four years later.")  However, a decision by Judge Leval dismissing plaintiff's claims *against the Staff Plan*

---

[16] The earliest document in the record which might constitute a clear repudiation of plaintiff's claim that he is entitled to additional employer contributions to his Retirement Fund for account for the years 1978 and 1979 is a letter dated November 2, 2002, in which the "trustees of the Local 338 Retirement Fund," through counsel, confirmed in response to an inquiry from plaintiff that "contributions for 1978 and the first four months of 1979 . . . were credited to Mr. Cohen's account, and included in the computation of his benefits."  (Attachments at 10.)  It is not clear whether the reference to the "Local 338" Retirement Fund in this letter was intended to be a reference to the Retirement Fund or the Staff Plan.  If the former, this letter would have started the running of the statute of limitations on a claim for unpaid contributions to the Retirement Fund.  However, because this letter was sent to plaintiff less than five years before he filed his initial complaint in this action and approximately 5.5 years before he filed the Amended Complaint, plaintiff's current claim would not be barred by the six year statute of limitations.

is not a clear repudiation of plaintiff's claim to benefits *under the Retirement Fund* and would not, therefore, have started the running of the statute of limitations on a claim against the Retirement Fund.

Third, defendants argue that plaintiff's cause of action accrued and the statute of limitations started to run in March 1999, when plaintiff wrote to Emanuel Laub of the RWDSU contesting the amount of his retirement benefits.  (See Def. Br. at 10; Attachments at 73 (March 8, 1999 Letter from Plaintiff to Emmanuel Laub).)  In plaintiffs' March 1999 letter, plaintiff made references to both the Retirement Fund and the Staff Plan, and alleged that his "monthly retirement check [was] incorrect."   (*See* Attachments at 73.)  The letter was quite vague; it did not specifically articulate any claim that plaintiff did not receive employer contributions to his account for 1978 and 1979, and it is not clear whether plaintiff was claiming that the allegedly incorrect monthly retirement check was from the Staff Plan or the Retirement Fund.  Moreover, it is not clear what, if anything, happened with the letter.  There is no response from Mr. Laub attached to the Amended Complaint, nor does the Amended Complaint contain any allegations regarding Mr. Laub's response (or lack of a response).  Even if the Court assumes that Mr. Laub never responded to the letter, defendants have not pointed to any authority holding that a plan administrator's failure to respond to a vague inquiry from a plan member constitutes a clear and unequivocal repudiation of that claim and thereby triggers the running of the statute the statue of limitations.  At least at the motion to dismiss stage, to the extent plaintiff's Amended Complaint can be construed as raising a claim against the Retirement Fund and/or the Union for unpaid employer contributions to his Retirement Fund account in 1978 and 1979, the Court cannot conclude that such a claim is time barred.[17]

---

[17] Although defendants did not raise this argument, one might have expected defendants to argue that the Retirement Fund clearly repudiated any claim plaintiff may have for additional benefits when it started paying him his monthly

Finally, defendants contend in their supplemental submission that even if plaintiff's claim for unpaid contributions to his Retirement Fund account in 1978 and 1979 is timely, it still fails because plaintiff received all the credits to which he is entitled.  However, defendants' argument in this regard is an argument for summary judgment rather than for dismissal under Rule 12(b)(6), as it relies on documents which cannot be considered at the motion to dismiss stage. *See Chambers,* 282 F.3d at 153 (discussing documents that can be considered by the Court in ruling on a motion to dismiss).[18]

## 5.   Claim for Unpaid Vacation Pay

Plaintiff's final claim in the Amended Complaint is that he did not receive one week of vacation pay that was owed to him for each of the years 1977, 1978, and 1979.  (*See id*. at 5.) Although the legal basis of plaintiff's vacation pay claim is not clear from the pleadings, the Court finds that it is time barred under any viable legal theory.  Vacation pay claims are not generally considered ERISA claims.  *See United Auto., Aerospace & Agr. Implement Workers of*

---

pension—which plaintiff now contends is an underpayment—sometime in late 1999 or early 2000. (*See* Def. June 11, 2010 Submission, at 3 (stating that plaintiff started collecting an early pension on December 1, 1999 at the age of 62 years and five months), Ex. D (showing payment of five months' worth of pension to plaintiff beginning on May 1, 2000 and monthly payments thereafter).)  While the Third Circuit has held that an underpayment of benefits itself constitutes a clear repudiation of any entitlement to greater benefits, such that the statute of limitations would start to run the moment a beneficiary first receives an underpayment, *see Miller v. Fortis Benefits Ins. Co.,* 475 F.3d 516, 521 (3d Cir. 2007), courts in this circuit have held that an alleged underpayment or miscalculation does not constitute a clear repudiation of a claim to greater benefits until the claimant inquires about the amount of benefits and the plan rejects his claim that the benefits were miscalculated.  *See Larsen v. NMU Pension Trust of NMU Pension & Welfare Plan*, 902 F.2d 1069, 1074 (2d Cir.1990) (positing that miscalculation claim did not accrue when claimant was informed she would receive monthly payments of $327.93, but would have accrued, at the earliest, when she inquired regarding the amount of benefits and was informed that her benefits were correctly computed); *Novella v. Westchester County*, 443 F.Supp. 2d 540, 545 (S.D.N.Y. 2006) (claim does not accrue until beneficiary "inquires about the calculation of his benefits and the Plan rejects his claim that the benefits were miscalculated"); *Miele v. Pension Plan of New York State Teamsters Conference Pension Plan & Retirement Fund*, 72 F.Supp.2d 88, 99 (E.D.N.Y. 1999) (a miscalculation claim accrues when plaintiff "inquire[s] about the amount of . . . benefits and [is] told . . . that those benefits [were] correctly computed") (citation omitted).  Following the logic of the decisions in this circuit, the Court finds that plaintiff's receipt of monthly payments from the Retirement Fund did not in itself start the running of the statute of limitations on any claim that those benefits were improperly calculated.  *See id.*

[18] The Court has not converted defendants' supplemental submission into a motion for summary judgment *sua sponte* because the two documents attached to the supplemental submission themselves are not sufficiently clear to enable the Court to resolve a motion for summary judgment and there is no affidavit from a person with knowledge explaining the documents.

*America, Local 33 v. R.E. Dietz Co.*, 996 F.2d 592, 597 (2d Cir. 1993) ("Vacation benefits paid

from an employer's general assets do not constitute an employee benefit plan under ERISA").

Instead, plaintiff's claim for unpaid vacation pay would likely arise under state contract law, or

under Section 301 of the Labor Management Relations Act ("LMRA") based on the vacation pay

provisions of his collective bargaining agreement with Local 338 (assuming the collective

bargaining agreement contained such provisions).[19]  *See Int'l Union, United Auto., Aerospace &*

*Agr. Implement Workers of America (UAW), AFL-CIO v. Hoosier Cardinal Corp.*, 383 U.S. 696,

697 (1966) (analyzing claim for vacation pay brought under a collective bargaining contract);

*Phelan v. Local 305 of the United Ass'n of Journeymen, and Apprentices of the Plumbing and*

*Pipefitting Indus. of the United States and Canada*, 973 F.2d 1050, 1059 (2d Cir. 1992) ("an

action for vacation pay is basically an action for damages based on an employer's alleged breach

of a collective bargaining agreement, which closely resembles a state law action for contractual

breach"); *Collette v. St. Luke's Roosevelt Hosp.*, No. 99 Civ. 4864 (GEL), 2002 WL 31159103,

at *11 (S.D.N.Y. Sept. 26, 2002) (plaintiff's claim for vacation pay allegedly due to him under

employment contract was a "garden-variety breach of contract claim" under state law); *Perron v.*

*Auburn Tech., Inc.*, No. 97 Civ. 52 (RSP), 1998 WL 312348, at *7 (N.D.N.Y. June 8, 1998)

("ERISA does not govern vacation pay.  Therefore, New York contract law governs [plaintiff's]

claim for additional vacation pay") (citation omitted).

     Whether plaintiff's vacation pay claim is brought under state law or under § 301 of the

LMRA, the statute of limitations would be six years.  *See Hoosier*, 383 U.S. at 707 (applying

state's six-year breach of contract statute of limitations to action under § 301 of the LMRA to

recover vacation pay pursuant to collective bargaining agreement); *Guilbert*, 480 F.3d at 149

("In New York, the Statute of Limitations on a claim for breach of contract is six years").

---

[19] The collective bargaining agreement is not in the record.

Moreover, under either theory, the statute of limitations on plaintiff's claim for unpaid vacation pay for the years 1977, 1978 and 1979 would have started to run upon breach of plaintiff's employment contract or of the collective bargaining agreement.  *See Guilbert*, 480 F.3d at 149-50 ("A cause of action for breach of contract ordinarily accrues and the limitations period begins to run upon breach . . . If, however, a contract requires continuing performance over a period of time, each successive breach may begin the statute of limitations running anew.")

Here, the alleged breach of plaintiff's right to be paid accrued vacation pay for the years 1977 through 1979 would have occurred no later than 1979, when plaintiff was terminated from his employment and according to plaintiff, was due to be paid his vacation pay.  (*See* Moss Affidavit, Ex. G (Verified Complaint) at ¶¶ 31, 32) (plaintiff alleges that he was "entitled to an addition sum for $747.00 as and for unpaid vacation pay over and above any other vacation pay paid to plaintiff by defendant" and that "plaintiff has made due demand upon defendant of said sum of $747.00, but defendant has failed and refuses to pay all or any part of said sum.").  Plaintiff was clearly aware of that alleged breach as early as 1980 since he filed a claim for vacation pay with the Division of Labor Standards, bearing case number 2-80-0293-0416, on May 23, 1980.  (*See, e.g.,* Attachments at 5.)  Since there is no indication that plaintiff's employer owed continuing performance or additional vacation pay after 1979, plaintiff's vacation pay claim is time-barred since the present lawsuit was filed over twenty-five years after the claim accrued.  *See Guilbert*, 480 F.3d at 149-50.

**6.      Plaintiff Fails to State a Claim against John Durso**

Plaintiff also names John Durso as a defendant in this action.  According to plaintiff's complaint, John Durso is the President of Local 338.  As far as the Court is aware, Mr. Durso has not formally moved to dismiss the action against him.  However, the Court dismisses any claims

against Mr. Durso *sua sponte* because the Amended Complaint contains no factual allegations

against Mr. Durso and none of the attachments to the Amended Complaint suggest that Mr.

Durso has engaged in any conduct that would entitle plaintiff to relief. *See Ho Myung Moolsan*

*Co.,* 665 F.Supp.2d at 251; *Sasso v. Cervoni,* 985 F.2d 49, 50 (2d Cir. 1993) ("[A]n individual is

not liable for corporate ERISA obligations solely by virtue of his role as an officer.")

## III.    CONCLUSION

For the reasons stated, all of plaintiff's claims against all defendants are dismissed except

his claim against the Retirement Fund and/or Local 338 for unpaid employer contributions to his

Retirement Fund account for the years 1978 and 1979. Within thirty (30) days of this Opinion,

the Retirement Fund and Local 338 are directed to either submit a letter to the undersigned's

Chambers requesting permission to move for summary judgment dismissing this claim, or to

contact Magistrate Judge Frank Maas to schedule a case management conference.

SO ORDERED.

Dated: New York, New York
       August 1, 2010

Richard J. Holwell
United States District Judge